## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **Student Doe** | ) |
| **by parent and "next friend"** | ) |
| **Father Doe** | ) |
| **Mail:** | ) |
| **PO Box #320077** | ) |
| **West Roxbury, MA 02132** | ) |
| **email: johnDoeBPS2018@gmail.com** | ) |
| **Plaintiff, Appellant** | ) |
| | ) |
| **v.** | ) **Case No.** |
| | ) |
| **Laura Perille, Superintendent** | ) |
| **Boston Public Schools** | ) |
| **2300 Washington Street** | ) |
| **Boston, MA 02119** | ) |
| **lPerille@bostonPublicSchools.org** | ) |
| **legal@bostonpublicschools.org** | ) |
| **voice 617-635-9320** | ) |
| *represented by* | ) |
| **Karen G Castaneda, Esq.** | ) |
| **Assistant Corporation Counsel** | ) |
| **Office of the Legal Advisor** | ) |
| **Boston Public Schools** | ) |
| **kcastaneda2@bostonpublicschools.org** | ) |
| **voice 617-635-9323** | ) |
| **Defendant** | ) |
| _____ | ) |

**COMPLAINT FOR CERTIORARI REVIEW**

**AND**

**COMPLAINT FOR VIOLATION OF STATUTORY AND CONSTITUTIONAL RIGHTS**

**AND**

**COMPLAINT FOR BREACH OF CONTRACT**

**Preamble:**

1. While issues of violation of state laws may be mentioned in this complaint and subsequent pleadings or motions or other documents in this United States Federal Court case, all claims of violations of state laws are hereby reserved for proceedings in state courts. This complaint and all of its pleadings or motions or other documents, including those in the future, only seek recourse under violations of the United States Constitution or United States Federal Laws.

**Parties:**

2. This case is filed under a pseudonym to protect the identity of minor child Student Doe. The public interest is not harmed by this case being filed under a pseudonym since the material elements of the case are public and

the public would not gain any additional benefit from knowing the specific

name of Student Doe.  The interest of vulnerable minor child Student Doe

however would be harmed by publication on the internet of his name for

the rest of his life.


3.  Plaintiff, Father Doe, is the father and "next Friend" of minor child, Student

Doe, who was admitted on March 14, 2018 by the Boston Public Schools

("BPS") to attend 7th grade at Boston Latin School ("BLS") in September

2018.  He may be reached at johnDoeBPS2018@gmail.com or by mail at PO

Box 320077, West Roxbury, MA 02132.


4.  Defendant, Laura Perille, is the Superintendent of BPS.  They are located at

2300 Washington St, Boston, MA 02119, legal@bostonPublicSchools.org.

Their counsel, Karen G Castaneda has communicated by email and phone

with plaintiff regarding this case and was sent a substantially similar version

of the complaint focused on violations of state law on August 14, 2018.

Thus, she has had more than 2 weeks to review the subject matter of this

complaint and indeed filed an over 100 page response in a state court on

August 24, 2018.  She may be reached at

kCastaneda2@bostonPublicSchools.org or 617-635-9323.


## Background and Facts:

5. Student **D**oe was born in Boston, Massachusetts while his mother, Mother

   **R**oe, had lived and worked in Boston for over 15 years.  See Exhibit 34 page

   13.


6. BPS Examination School application is undertaken by taking a "BPS

   Examination" in the November prior to beginning school the following

   September.  See Exhibit 1 and Exhibit 37.


7. Beginning in 2010, BPS has required that students be residents of Boston

   one year prior to attending BLS.  BPS has done this by requiring that

   students be  residents of Boston prior to taking the entrance examination in

   the November prior to their matriculation the following September.  See

   Exhibit 1, Exhibit 37, and Exhibit 39.

8. Massachusetts Law considers a minor student's residence as the legal domicile of any one of his parents.  See Herkshoff, 366 Mass. at 577; Ding v. Payzant 17 Mass.L.Rptr. 656, 2004 WL 1147450 at 26; George H. and Irene L. Walker Home for Children, Inc. v. Town of Franklin, 416 Mass. 291, 295 (1993); Bd. Of Educ. v. School Committee of Amesbury, 16 Mass.App.Ct. 508,512 (1983).  This is so because a child is generally said to lack the capacity to choose a domicile. Herhkoff, 366 Mass. at 576-77.

9. Massachusetts Law states "A change of domicil takes place when a person with capacity to change his domicil is <u>physically present in a place</u> and <u>**intends** to make that place his home</u> for the time at least; 'the fact and intent must concur.'" Hershkoff, 366 Mass. at 576-577, quoting Opinion of the Justices, 5 Met. 587, 589 (1843)."

10. On September 5, 2017 Mother Roe[1] entered into an agreement to purchase a single family home in Boston for $1,000,000 (one million dollars) and sent a $10,000 (ten thousand dollars) deposit for the home.  See Exhibit 22.

---

[1] With the assistance of Father Doe.

11. On October 11, 2017 Student Doe's mother, Mother Roe, changed her domicile from the State of Maryland to Boston, Massachusetts by <u>physically coming to Boston</u> and <u>intending to make Boston her home</u> as evidenced by the following:

    a. She had contracted to buy a house in Boston.  See Exhibit 22.

    b. She obtained work with a consulting firm in Boston.  See Exhibit 24.

    c. She flew from Baltimore, Maryland to Boston, Massachusetts. See Exhibit 20.

    d. She brought belongings with her from Maryland.  See Exhibit 24.

    e. She relinquished her Maryland Driver's License.  See Exhibit 23.

    f. She relinquished her Maryland voting rights.  See Exhibit 24.

    g. She got a Boston Massachusetts driver's license.    See Exhibit 23.

    h. She registered to vote in Boston, MA.  See Exhibit 24.

    i. She changed bank account addresses to Boston.  See Exhibit 25.

    j. She changed government account addresses to Boston. See Exhibit 35.

    k. She joined a church in Boston.  See Exhibit 24.

    l. She scheduled doctor's appointments in Boston for herself and Student Doe.

m. She did not intend to make Maryland her home in the future.

See Exhibit 24.

n. She intended to make Boston, Massachusetts her home.

See Exhibit 24.

12. Between October 11, 2017 and November 18, 2017 Mother Roe stayed in

hotels and with friends while attempting to obtain a permanent home due

to the seller reneging on the Purchase and Sale Agreement for the home.

The seller's reneging is currently the basis of an active Land Court law suit.

See Exhibits 21, 38, 22, and 33.

13. On November 15, 2017 Mother Roe went to a "BPS Welcome Center" and

explained to them the contents of the last 2 paragraphs, including the

factthat she was staying in hotels and with friends and that the most

consistent mailing address she had was her work address.  The BPS

Welcome Center staff advised her that she may use her work address as

her "Physical Address" and that Student Doe may register to take the BPS

Examination.

14. On November 18, 2017 Student Doe took the BPS Examination.

   See Exhibit 27.

15. On March 14, 2018 BPS offered Student Doe admission to BLS.

   See Exhibit 26.

16. On March 14, 2018 Student Doe accepted BPS's offer of admission.

   See Exhibit 27.

17. On June 15, 2018 BPS Ombudsperson wrote Student Doe "does not actually

   reside in the City of Boston, in violation of the Boston Public School's

   Residency Policy … therefore your child will be denied entrance to the

   Boston Latin School for the upcoming 2018-2019 academic year."  See

   Exhibit 28.

18. On July 15, 2018 Student Doe noted his appeal by email and sought the fact

   basis for BPS's decision and requested an opportunity to be heard.  See

   Exhibit 29.

19.On July 15, 2018 BPS Ombudsperson replied by email (see Exhibit 37) that

the fact basis was:

    a. "The address you list as your Boston "residence" has been confirmed

       by the City of Boston Assessors Office as a commercial building

       therefore residency is impossible."

    b. "The letter was sent to the address and subsequently returned."

    c.  "Our residency investigator dropped the letter off at your home in

       Easton this past week."

    d. "Our residency policy requires full time residency prior to taking the

       exam in November."

20.On July 15, 2018 Student Doe responded (see Exhibit 30):

    a. "The commercial building address I had provided was my work

       address, which is the only consistent address I have had for the past

       year."  See Exhibits 24 and 41.

    b. "I do not know why the mail you sent was returned. I have reached

       out to the office manager to find out why that happened."

c. "I do not have a home in Easton. My son's paternal uncle lives in Easton." See Exhibits 36, 24, and 40.

d. "My residency in Boston was established when **I moved with my and my son's clothes**, toothbrush, and other belongings from my parents' home in Maryland **into a hotel in Boston in October 2017**. In September 2017 we had entered into a contract to purchase a single family home in the West Roxbury section of Boston and sent a deposit check for $10,000 for the home. The seller reneged on the contract and **in October 2017 I was in Massachusetts Land Court** at 3 Pemberton Square, Boston, MA with suitcases filled with my and my son's clothes and other belongings seeking injunctive relief **so that I may move into the home that we were purchasing**." See Exhibits 20, 21, 22, 23, 24, 25, 33, 35, and 38.

21. On July 15, 2018 Mother Roe wrote she "would like to proceed with a hearing". See Exhibit 30.

22. On July 19, 2018 BPS Ombudsperson wrote "the investigation and the information provided are not sufficient evidence to demonstrate residency

... This shall serve as the District's final response on this matter."   See

Exhibit 31 which has a photograph of this BPS final denial letter.


23. BPS never provided the hearing that was explicitly requested on July 15,

2018.  See Exhibit 30.


24. On August 6, 2018 Father Doe made a FOIA request to BPS for "any and all

documents concerning the application and acceptance or otherwise related

to" Student Doe and clarified the request on August 7, 2018 to include

"documents relating to his application and acceptance and future ability to

matriculate including the papers his mother completed to establish

residency in Boston, his test scores, his grades, and any other documents or

meeting notes including hand written notes or emails.  My understanding is

that the ombudsperson's office ...".


25. On August 28, 2018 BPS responded to the FOIA request with BPS's record

concerning Student Doe.  See Exhibit 34.

26. The "Record" on review for this complaint is comprised of Exhibit 34 and correspondence with BPS prior to its issuing its "final response" on July 19, 2018.

27. Mother Roe has leased a full apartment for one year in Boston for $28,320/yr or $2,360/month beginning in September so that she has a fixed place to stay while Student Doe goes to school and she is waiting for the Land Court case to be decided.[2]

28. Not allowing Student Doe to begin school with his classmates and form relationships at the start of not just the school year, but the start of the school's enrollment for a six year term, will have a lasting adverse effect on his development of friends and acclimation during this school year. This is particularly true since 7th grade is the first grade offered at the Boston Latin School and many social relations are formed as students first come to the school.

---

[2] Since the apartment is not available for the first 2 weeks of September, Mother Roe plans to stay with Student Doe in a hotel or with friends during that period.

**Argument:**

**Constitutional Violations of Domicile and Freedom of Movement**

29. BPS's determination that Mother Roe was not domiciled in Boston, Massachusetts from October 11, 2017 to November 18, 2017 is a violation of her right to interstate movement as guaranteed by the "Privileges and Immunities" clause of Article 4 of the US Constitution, the 14th Amendment of the United States Constitution, and upheld by United States Federal Courts in Corfield v. Coryell, 6 Fed. Cas. 546 (1823).

30. BPS's determination that Mother Roe was not domiciled in Boston, Massachusetts from October 11, 2017 to November 18, 2017 because she did not have a fixed residence in Boston represents an impermissible barrier to her right of interstate movement as guaranteed by the "Privileges and Immunities" clause of Article 4 of the US Constitution, the 14th Amendment of the United States Constitution, and upheld by the United States Supreme Court in Corfield v. Coryell, 6 Fed. Cas. 546 (1823), Saenz v. Roe, 526 U.S. 489 (1999).

**Constitutional Violation of Right to Attend Public Schools for those without a
Fixed Home per McKinney Vento Act**

31. BPS's determination that Student Doe may not attend BLS because he did
    not have a "fixed, regular, and adequate nighttime residence" from
    October 11, 2017 to November 18, 2017 is a violation of Student Doe's
    rights under the McKinney Vento Act (42 U.S.C. 11431 et seq.)

**Constitutional violations of Due Process of Law**

32. Permanent denial of admission to a world renowned magnate public school
    that substantially increases their long-term education, vocation,
    employment, and income opportunities is at the very least on par if not
    much more than "temporary suspension for 10 days".

33. BPS's failure to provide Mother Roe or Student Doe a hearing despite her
    requesting a hearing not once, but twice, in writing on July 15, 2018 in the
    notice of appeal and again in the written appeal (see Exhibit 29 and Exhibit
    30) violated their rights under Article X of the Massachusetts Constitution,
    the 5th Amendment of the United States Constitution, and the 14th
    Amendment of the United States Constitution.  The US Supreme court has
    noted that school districts "must recognize a student's legitimate

entitlement to a public education as a property interest that is protected by the Due Process Clause" in Goss v. Lopez US 419 US 565 (1975) pp 573-74.

34. "Students facing" permanent denial of admission to a world renowned magnate public school that substantially increases their long-term education, vocation, employment, and income opportunities[3] "have property and liberty interests that qualify for protection under the Due Process Clause of the Fourteenth Amendment." (adapted from Pp. 419 U. S. 572-576).

    a. "Having chosen to extend the right to an education to people of appellees' class generally," BPS "may not withdraw that right on grounds of misconduct absent fundamentally fair procedures to determine whether the misconduct has occurred, and must recognize a student's legitimate entitlement to a" world renowned "public education as a property interest that is protected by the Due Process Clause, and that may not be taken away for misconduct without observing minimum procedures required by that Clause." (adapted from Pp. 419 U. S. 573-574).

---

[3] Originally "temporary suspension"

b. "Since" denial of attendance to a world renowned school "could

seriously damage the students' reputation, as well as interfere with

later educational and employment opportunities," BPS's "claimed

right to determine unilaterally and without process whether that

misconduct has occurred immediately collides with the Due Process

Clause's prohibition against arbitrary deprivation of liberty."

(adapted from Pp. 419 U. S. 574-575).

c. Denial of admission to a world renowned "school is not *de minimis*

and may not be imposed in complete disregard of the Due Process

Clause. Neither the property interest in educational benefits"

permanently "denied nor the liberty interest in reputation is so

insubstantial that" denial of admission "may constitutionally be

imposed by any procedure the school chooses, no matter how

arbitrary." (adapted from Page 419 U. S. 566).


35. "Due process requires, in connection with" denial of admission to a world

renowned school "that the student be given oral or written notice of the

charges against him and, if he denies them, an explanation of the evidence

the authorities have and an opportunity to present his version. Generally,

notice and **<u>hearing should precede</u>** the student's removal from school…"

(adapted from Pp. 419 U. S. 577-584.)

## <u>Constitutional Violation of Right to Equal Protections</u>

36. A good public education through the 12th grade is a fundamental right

enforced by each and every state of the United States of America.  In

Corfield v. Coryell, Justice Bushrod Washington wrote in 1823 that the

Privileges and Immunities Clause of Article IV of the US Constitution

protects rights that are "in their nature, fundamental; which belong, of

right, to the citizens of all free governments; and which have, at all times,

been enjoyed by the citizens of the several states which compose this

Union, from the time of their becoming free, independent, and sovereign."

Thus, equal protections must apply to education, and application, to public

high schools.

37. BPS did not have a policy requiring one year of residence prior to

application for Boston Latin School for over a hundred years prior to 2010

and there is no new compelling government interest to justify this new

protectionist policy that forces parents to move their children in sixth grade

or earlier if they are to be able to attend seventh grade in Boston.  Since

many elementary schools end in sixth grade, this policy creates an

unnecessary barrier to moving into Boston when a child is starting seventh

grade and requires a challenging education as examination schools are

more capable of providing then non-examination schools.  **Examination**

**schools are not equal to non-examination schools** in the long-term

education, vocation, employment, and income opportunities they provide

to students.  By BPS choosing to provide public education to students in

seventh grade, it is impermissible for it to then create two different classes

of seventh graders, one class that could have applied to examination

schools and another class than could not have applied to examination

schools, based upon their duration of residency in Boston or their prior tax

contributions to Boston.


38. For example, there are many parents who do not reside in the

Commonwealth of Massachusetts who know that for either the parents'

graduate studies or post-graduate studies or employment that they will be

relocating to Boston as their child would be starting seventh grade that are

deterred from moving to Boston because their child would not be eligible

to attend an examination school in Boston and the non-examination

schools in Boston have inferior academic records to either the examination

schools in Boston or for that matter the schools in many of Boston's

suburbs.  Such a barrier and deterrent are a violation of constitutionally

guaranteed rights to freedom of movement between states.


39.BPS Residency Policy for Examination Schools is unconstitutional since its

"prohibition of benefits to residents of less than one year creates a

classification which denies equal protection of the laws because the

interests allegedly served by the classification either may not

constitutionally be promoted by government or are not compelling

governmental interests." (P. 394 U. S. 627).


40.BPS Residency Policy for Examination Schools is unconstitutional since "the

Constitution guarantees the right of interstate movement, the purpose of

deterring the migration of "students or their Mothers "into a State is

impermissible, and cannot serve to justify the classification created by the

one-year waiting period."  (Pp. 394 U. S. 629-631).

41. BPS Residency Policy for Examination Schools is unlawful since a City or "A
State may no more try to fence out those " students "who seek higher"
education "than it may try to fence out" students "generally." (Pp. 394 U. S.
631-632)

42. BPS Residency Policy for Examination Schools is unlawful since "The
classification may not be sustained as an attempt to distinguish between
new and old residents on the basis of the contribution they have made to
the community through the payment of taxes because the Equal Protection
Clause prohibits the States from apportioning benefits or services on the
basis of the past tax contributions of its citizens." (Pp. 394 U. S. 632-633)

43. BPS Residency Policy for Examination Schools is unlawful since regardless of
whether BPS considers the move to have taken place in October 2017 or in
September 2018, "In moving from jurisdiction to jurisdiction appellees were
exercising a constitutional right, and any classification which penalizes the
exercise of that right, unless shown to be necessary to promote a

compelling governmental interest, is unconstitutional." ." (Pp. 394 U. S. 634).

44. BPS Residency Policy for Examination Schools is unlawful since "Appellants do not use and have no need to use the one-year requirement for the administrative and governmental purposes suggested, and under the standard of a compelling state interest, that requirement clearly violates the Equal Protection Clause" (Pp. 394 U. S. 634-63)

## Substantial Evidence Does NOT Support BPS Findings

45. Substantial Evidence in the Record does not support that Mother Roe was not domiciled in Boston from October 11, 2017 to November 18, 2017 or for that matter ever.

   a. There is no evidence in the Record that Mother Roe was physically present in any place other than Boston from October 11, 2017 to November 18, 2017.

   b. There is no evidence in the Record that Mother Roe had the intent to make any place other than Boston her home from October 11, 2017 to November 18, 2017.

c. The fact that Mother Roe did not have a "Home Address" on November 15, 2018 had been explained to BPS Welcome Center staff on November 15, 2018 and BPS staff had advised that Mother Roe use her work address as her "Physical Address" on the residency verification form (Exhibit 34 page 10) if that was an address at which Mother Roe could receive mail.

d. The fact that Mother Roe did not have "fixed and regular nighttime residence" from October 11, 2018 to November 18, 2018 was brought to the attention of BPS ombudsperson Carolyn MacNeil in Mother Roe's appeal of July 15, 2018 (see Exhibit 30) and consequently the use of a work address as a "Physical Address" may not constitute "Substantial Evidence" of Mother Roe not having a residence in Boston as per the McKinney-Vento Act along with other Massachusetts laws.


46. Substantial Evidence in the Record does not support BPS's finding that Mother Roe had a "Home in Easton [*sic*]" [4] from October 11, 2017 to November 18, 2017 or for that matter ever.

---

[4] BPS states "Easton" when actually the address in question was in North Easton.

a. The fact that a letter dropped off at the home owned by Student Doe's uncle, "Uncle **D**oe", in June 2018 ultimately reached Student Doe does not constitute substantial evidence of Mother **R**oe having a home in North Easton from October 11, 2017 to November 18, 2017.

b. The North Easton, Bristol Registry of Deeds shows the home in question has been owned by Uncle Doe since December 7, 2006. A simple on-line search of the Bristol Registry of Deeds shows that the home is not owned by either Mother Roe or Father Doe, but instead is owned by an Uncle Doe. If BPS failed to search the Bristol Registry of Deeds that would be grossly negligent. If BPS searched the Bristol Registry of Deeds and then chose to ignore that information that would be a failure to consider exculpatory evidence and in bad faith. See Exhibit 36.

c. Furthermore, even a basic search on Google, as BPS has indicated they perform, shows that "Doe Easton" or "Roe Easton" or "Doe Easton School" produces multiple results for Uncle Doe and Aunt Doe and their children but no results for Mother Roe, Father Doe, or Student Doe indicating that Mother Roe did not have a home or for that matter any nexus whatsoever with Easton.

**Substantial Evidence Refutes BPS Findings**

47. Substantial Evidence in the Record clearly refutes BPS's finding that Mother

Roe did not have a change of Domicile to Boston on October 11, 2017

based on Massachusetts court's established statement that "A change of

domicil takes place when a person with capacity to change his domicil is

physically present in a place and intends to make that place his home for

the time at least" Hershkoff, 366 Mass. at 576-577, quoting Opinion of the

Justices, 5 Met. 587, 589 (1843).  This evidence includes:

    a.  Evidence of Mother Roe's physical presence in Boston:

        i.  The boarding pass of Mother Roe's flight to Boston on October

           10, 2018 (Exhibit 20)

        ii.  The receipt for Mother Roe's hotel room in Boston on October

           10, 2018 (Exhibit 21).

        iii.  Court records of Mother Roe's presence in Massachusetts Land

           Court in Boston on October 11, 2018 (Exhibit 33).

        iv.  BPS records of Mother Roe's presence at a welcome center in

           Boston, MA on November 15, 2018 (Exhibit 34).

        v.  BPS records of Mother Roe dropping Student Doe off for his

           examination on November 18, 2018 (Exhibit 34).

vi.  Mother Roe's affidavit (Exhibit 24)

b.  Evidence of Mother Roe's intent to make Boston her home:

    i.  Purchase contract for a home in Boston (Exhibit 22)

    ii.  Work in Boston (Exhibit 30).

    iii.  Driver's license with her Boston work address (Exhibit 23)

    iv.  Social security letter with her Boston work address (Exhibit 35).

    v.  Bank Records with her Boston work address (Exhibit 25).

    vi.  Court Docket showing law suit to purchase home in Boston
         (Exhibit 33).

    vii.  Registration to Vote in Boston.

    viii.  Mother Roe's statement of her intent.  Exhibit 30.

## Violations of Laws

48. BPS's finding of Mother Roe not having attained domicile in Boston on

October 11, 2017 is in violation of the laws that every person must have a

domicile at all times ("Every person must have a domicil, and he can have

only one domicil at a time" Hershkoff, 366 Mass. at 576).  Mother Roe had

clearly left Maryland both physically and had no intent to be domiciled in

Maryland.  Mother Roe had clearly entered Boston, Massachusetts with the intent to make Boston, Massachusetts her home.  If her Domicile was not Boston, Massachusetts, then she would not have had any domicile on October 11, 2018.

49. BPS intentional delay of providing Mother Roe their "final" decision was a violation of due process. BPS's delay was intentional since (i) BPS usually communicates by email, (ii) BPS was informed that the paper mail address they were using was incorrect, and (iii) despite the fact that BPS was informed that Mother Roe would be traveling over the summer and thus needed to receive communications by email, BPS chose to only send their "final" decision by paper mail to an address that they had already been informed was incorrect.

## BPS's Breach of Contract

50. Student Doe has a statutory right to attend the public school of the town where he actually resides and, since he will reside in Boston in September 2018, he has a right to attend a Boston public school.

51. Student Doe and Mother Roe have a contract with BPS for Student Doe to attend BLS in September 2018. BPS's denial of Student Doe's admission represents a breach of this contract.

## **Legal Points of Reference:**

52. "Privileges and Immunities" clause of Article 4 of the US Constitution.

53. Corfield v. Coryell, 6 Fed. Cas. 546 (1823)

54. 14th Amendment of the United States Constitution

55. Saenz v. Roe, 526 U.S. 489 (1999)

56. Shapiro v. Thompson, 394 U.S. 618 (1969)

57. Massachusetts General Law Chapter 76, Section 5.

58. DING, et al. v. PAYZANT, et al., Suffolk County Superior Court, May 2004, Opinion of Justice Judith Fabricant.

59. Hershkoff v. Registrars of Voters of Worcester, 366 Mass. 570, 575-576 (1974)

60. Opinion of the Justices, 5 Met. 587, 589 (1843).

61. John Ames vs Town of Wayland, Middlesex Superior Court Civil Action No. 14-6717, August 2014

62. Goss v. Lopez US 419 US 565 (1975) pp 573-74

**Select Legal Citations:**

63. From DING, et al. v. PAYZANT, et al., Suffolk County Superior Court, May 2004, Opinion of Justice Judith Fabricant:

"Before evaluating the Department's decision, it is necessary to articulate the meaning, **as a matter of law**, of the statutory phrase **"where he actually resides."** Residence **is synonymous with domicile**; "[b]oth terms indicate the place of one's home or dwelling place." Hershkoff, 366 Mass. at 576. **"Every person must have a domicil**, and **he can have only one domicil at a time**, at least for the same purpose." Id. at 576. "'Home is the place where a person dwells and which is the center of his domestic, social and civil life.'" Id., quoting Restatement 2d: Conflict of Laws, § 12 (1971). **"A change of domicil takes place when a person with capacity to change his domicil is physically present in a place and intends to make that place his home** for the time at least; 'the fact and intent must concur.'" Hershkoff, 366 Mass. at 576-577, quoting Opinion of the Justices, 5 Met. 587, 589 (1843). "The realities of the circumstances do not give way to a contrary determination, no

matter how dogged, to establish a different domicil." Teel v.

Hamilton-Wenham Regional School Dist., 13 Mass. App. Ct.

345, 349 (1982)."


"Steps that an adult would normally take upon a change of

domicil" including ""**changing the address on his or her**

**driver's license**", "**voter registration**", "**employment**", "**bank**

**records**", "civic, **religious**, cultural or social **organization**",

"**relationships with health care providers** in Boston",

"**patronizing any shops or services in Boston**".

**Relief Sought:**

64. Wherefore, Plaintiff asks this honorable court to order BPS to

    a. honor their contract admitting Student Doe to BLS beginning this

       September 2018,

    b. provide Student Doe an "equal" orientation to BLS as was afforded

       other students during the week of August 20, 2018 from which

       Student Doe was asked to leave,

c. pay court costs and other expenses and costs associated with bringing suits against BPS,

d. grant any other relief this honorable court may provide including without limitation pain and suffering, emotional harm, lost opportunity costs, and other expenses and losses.

## Certification, Verification, Attestation, and Affidavit:

43.    By signing below, I certify under penalty of perjury that I have read this complaint and that to the best of my knowledge, information, and belief that the facts stated therein are true and that no material facts have been omitted therefrom and that this complaint (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by  non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

44.     By signing below, I attest that the information in this complaint is true and accurate to the best of my knowledge, information, and belief under the pains and perils of perjury.

Humbly and Respectfully,

Father Doe /electronically signed/      August 31, 3018

Mail: PO Box 320077, West Roxbury, MA 02132

email: johnDoeBPS2018@gmail.com

I certify that the above is sent to Defendant by email at

legal@bostonpublicschools.org ,  lPerille@bostonPublicSchools.org,

kcastaneda2@bostonpublicschools.org on August 31, 2018.


Father Doe /electronically signed/