## COMMONWEALTH OF MASSACHUSETTS

**SUFFOLK, ss.**                    **SUPERIOR COURT DEPARTMENT**
                                    **CIVIL ACTION NO.: NO.1884CV02594**

_____
**STUDENT DOE**                                    )
**By Parent and "Next Friend" FATHER DOE**    )
     **Plaintiff**                                     )
                                                   )
     **V.**                                          )
**Laura Perille, Superintendent of**              )
**Boston Public Schools**                          )
**Defendants.**                                     )
_____)

## DEFENDANTS' MEMORANDUM IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTIONS FOR TEMPORARY RESTRAINING ORDERS

### I.    FACTS

The Defendant, Laura Perille, is the Superintendent of Boston Public Schools ("BPS"), a department of the municipality, the City of Boston.  Within BPS, Ms. Carolyn MacNeil serves at the District's Ombudsperson. *See Exhibit 1,* Affidavit of Carolyn MacNeil.  The Ombudsperson serves as an objective and neutral party tasked with listening and investigating complaints within the Boston Public School system. The Ombudsperson is a central point of contact and resource for parents and other members of the community who have concerns related to BPS. *See Exhibit 2,* https://www.bostonpublicschools.org/Domain/2467 last visited 9/14/18. The Ombudsperson represents the Superintendent in matters of concern including issues revolving student residency issues.

BPS utilizes a student residency requirement, as many and most cities and towns do. Under the BPS Residency Policy, "[i]n order to attend Boston Public Schools, a student must reside in the City of Boston. The residence of a minor child is presumed to be the legal, primary

residence of the parent(s) or guardian(s) who have physical custody of the child." *See Exhibit 3*, http://www.bostonpublicschools.org/residencypolicy, last visited 8/22/18 and *Exhibit 4*, <u>Superintendent Circular on BPS's Residency Policy and Enforcement Strategy</u>. The residency requirement protects those living in and paying taxes to the City of Boston who reasonably expects certain returns on their investments. Residency fraud has been a long-standing, on-going issue for the City of Boston. *See Exhibit 5*, <u>Various News Articles</u>.  Additionally, given the high enrollment of students within Boston and the lack of facilities and budget to accommodate same, it is necessary to ensure compliance of this residency policy.

The Boston School Committee (BSC) has approved clear and extensive residency investigation and enforcement strategies, including: employment of a residency investigator to pursue cases of suspected residency fraud; random residency audits and spot-checks of out-of-city MBTA train stations; and a Residency Tip Line (617-635-9609) for families, staff, and students to report possible residency violations. *See Exhibit 3& 4*.   Additionally, it is well established that any family under investigation may be required to present additional proofs of residency beyond those outlined above. <u>Id.</u> However, the process provides protections for students and families aggrieved by a dismissal due to failing to reside in Boston. Said families and students may appeal a determination through the Office of the Ombudsperson. The request to appeal must be made within ten (10) days of the dismissal notice.

In the present case, Student Doe's mother, registered Student in October, 2017 claiming to the district that both she and the Student live at "90 Canal Street, Apt. 400 Boston MA." *See Exhibit 6*, <u>Student Information</u>. At the time, Mother indicated that rather than having BPS assign student to a school, she intended on homeschooling student. <u>Id</u>. Nevertheless, Student was allowed to sit for the Independent School Entrance Exam (ISEE) based on the information

provided by Mother at the time of registration.   However, after several correspondences addressed to Mother were returned to BPS, it was discovered that the address used by Mother at registration was not a valid residence and in fact a commercial property.  *Exhibit, 7*, Email from Martha Pierce to Carolyn MacNeil and Google Map picture of 90 Canal Street.   On June 15, 2018, Mother was notified that Student was being dismissed from Boston Latin School for the upcoming 2018-2019 academic years since she and the Student were not Boston Residents.  *See Exhibit 6*.   On July 15,2018, Mother tried to appeal the dismissal, however presented no further proof of residency and her appeal was eventually denied.

## II.   **LEGAL ARGUMENTS**

### A.  **Residency**

M.G.L. c. 76 §5 states that "every person shall have a right to attend the public schools of the town where he actually resides." "Residence is synonymous with domicile; both terms include the place of one's home or dwelling." Hershkoff v. Bd. Of Registrar of Voters, 366 Mass.570, 576 (1974). "Home" is the "center of his domestic, social, and civic life." Martinez v. Superintendent of Schools of Swampscott, 83 Mass.App.Ct. 1110 (2013). Factors to consider to determine one's home include the child's school location history, involvement in community, and where a child's friends or activities are located. Ames v. Town of Wayland, 32 Mass.L.Rptr. 325 (Aug. 2015). Every person must have one domicile at a given time. See *Herkshoff*, 366 Mass. at 576 (citations omitted). Domicile is determined by proof of intent to remain permanently or for an indefinite amount of time, without plans to return to a former or another place of abode. See id. at 578 (citations omitted). The link between residency and school responsibility is firm; even if the student's best interests tend in favor of enrollment at a

particular school, a district is not obligated to provide services to a non-resident student. *In Re: Salem Public Schools*, 11 MSER 85, 86 (Crane, 2005).

In the present case, Plaintiff has not provided any reliable proof of residence.  Plaintiff's exhibits fail to support the claims that Mother and Student have established residence in Boston; Plaintiff has attached plane tickets, establishing a trip from Baltimore to Boston (Plaintiff's Exhibit 20), confirmation for a one night stay at the Westin Copley Hotel for Nov 18, 2017 (Plaintiff's Exhibit 38), an unexecuted Purchase and Sale Agreement (Plaintiff's Exhibit 22) and a redacted version of Mother's Driver's License (Plaintiff's Exhibit 23).  Plaintiff also submitted a self-serving affidavit by Mother which basically reiterates the same set of facts as the complaint without providing any additional proof to substantiate her allegations.  *See Plaintiff's Exhibit 23.*  Furthermore, the documents Mother submitted, including her driver's license, list the Canal Street address, which is a commercial property not a residence.  *See Exhibits 6 and 7.*

Under the law as cited above, the domicile and residence of the Plaintiff in this matter is presumed to be with his parents, who have provided insufficient proof of recognized indicia of Boston Residency. As part of the Plaintiff's' evidence to argue the indicia of residence being established in in Boston, Plaintiff submitted a Purchase and Sale Agreement which is the subject of litigation with the Land Court (Plaintiff's Exhibit 22 and Affidavit of Mother Doe, Plaintiff's Exhibit 24*.)*  Mother claims in her affidavit that she "intended to make Boston her permanent home and domicile at the home she was purchasing with a job she was starting"  (Plaintiff's Exhibit 24 ¶5(c)*).*  However, the Purchase and Sale Agreement that the Plaintiff seeks to enforce merely names Father and it is Father that is the named Plaintiff in the Land Court Action, not Mother.  *See Exhibits 9,* Underacted Purchase and Sale Agreement *and Exhibit 10,* Amended

Complaint Land Court Docket 17MISC 000576[2].   Notably, Father lists an address in Great Falls Virginia as the address to be used for correspondence in the land court action.   *See Exhibit 10.*

Furthermore, Mother claims in her affidavit she is starting a consulting job with Medi Managers, LLC.   *See Plaintiff's Exhibit 24¶ 12 and Exhibit13, Transcript of August 24, 2018 Hearing* Medi Managers, LLC is a company that was conveniently created on October 24, 2017, the office for which is located at 90 Canal  Street.   *See Exhibit 14, Secretary of State Corporation Division's Business Entity Summary for Medi Managers, LLC.*   However, Mother has provided no details regarding this alleged consulting position.   In fact, Mother, a physician, maintains licenses in multiple states however, allowed her Massachusetts license to lapse in 2008, nor does she include a Massachusetts address as a primary practice address.   *See Exhibit 11,* Shona Pendse's Board of Registration in Medicine License Status for Massachusetts, Maryland, Washington D.C., Virginia, California, New York, and Florida.    Father, also a physician that holds multiple licenses in various states similarly does not list a Massachusetts address for his primary practice address.   *See Exhibit 12,* Pankaj Merchia's Board of Registration in Medicine License Status for Massachusetts, Maryland, Virginia, and Florida. Mother also states in her Affidavit she as obtained an Apartment the lease for which **begins** in September 2018.   *Affidavit of Mother Doe ¶ 34.*   Mother claims to have "stayed in temporary housing including hotels and friend's homes since she did not have a fixed home" but only submitted a copy of a hotel confirmation for one night, nor does she ever provide the identity of these "friends" or the address in Boston she stayed.   *See Id ¶ 19 and Plaintiff's Exhibit 38.*   Most notably, both Mother

---

[2] Notably, in denying the Plaintiff's Motion for Preliminary Junction, "the court cannot at this time find that plaintiff has a likelihood of success on the merits"  Judge Foster, Hon. Robert B. Docket Entry Land Court Docket 17MISC 000576 10/11/2017

and Father have admitted that they did not reside in Boston during the relevant time period and instead reside in Brookline, Massachusetts. *See Exhibit 13, P.9: 17-22 and P.10: 16-25.*

Mother therefore cannot establish that she was in fact a resident of Boston. Notably, Mother's affidavit is silent as to Plaintiff's whereabouts or activities during this time. Even if Mother was able to provide sufficient proof of residency, Mother has not complied with BPS' Requirements for enrolling Student at Boston Latin School. As indicated in the Home School Approval Form Mother was provided, Mother was to substantiate the letter grades for Student, which she has not. *See Exhibit 6 and 15, Email Communications between BPS Homeschooling and Shona Pendse.*

Again, in support of its arguments, Plaintiff attached an unsigned affidavit from his mother, which is knowingly self-serving in nature and should not be accepted by the court. Russo & Minchoff v. Gianasmidis, No. 14-02070, 2015 WL 2457940, at *4 (Mass. Super. May 5, 2015) (not accepting a self-serving statement because statement merely speculated about a location (provided a range of addresses) and time frame (provided a range of dates)). Hearsay in an affidavit is unacceptable to the extent it cannot defeat summary judgment, for example. Madsen v. Erwin, 395 Mass. 715, 721, 481 N.E.2d 1160, 1164 (1985) *citing* Neely v. St. Paul Fire & Marine Ins. Co., 584 F.2d 341, 344 (9th Cir.1978); *Kern v. Tri-State Ins. Co.,* 386 F.2d 754, 756 (8th Cir.1967). The rationale for requiring admissible evidence in affidavits is to ensure that "trial would [not be] futile on account of lack of competent evidence." Kern v. Tri-State Ins. Co., *supra.* "Conclusory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient to avoid summary judgment." Olympic Junior, Inc. v. David Crystal, Inc., 463 F.2d 1141, 1146 (3d Cir.1972). *See also* Shapiro Equip. Corp. v. Morris

& Son Constr. Corp., 369 Mass. 968 (1976), *citing* Automatic Radio Mfg. Co. v. Hazeltine Research, Inc., 339 U.S. 827, 831 (1950).

Furthermore, an affidavit not signed under the pains and penalties of perjury does not qualify as a sworn affidavit. Com. v. Marcelini, No. CRIM. 95-0350, 2009 WL 1897907 at 7 (Mass. Super. June 30, 2009) *citing* Commonwealth v. Francis, 432 Mass. 353, 372 n. 16 (2000) (upholding trial judge's decision to discredit witness's written statement as an "affidavit" in motion for new trial where it was not signed under pains and penalties of perjury).  *See also* Commonwealth v. Scoggins, 439 Mass. 571, 578 (2003) (defendant's self-serving assertions not enough to establish substantial issue); *see also* Commonwealth v. Rebello, 450 Mass. 118, 130 (2007) (motion judge has the right to discount defendant's statement as self-serving and deny motion for new trial without hearing).

Based on all the above statutory and case law, facts, common sense inferences and analysis, Defendants respectfully request the court find that the Plaintiff does not legally reside in Boston and DENY Plaintiff's request for a preliminary injunction.

**B.  Revocation of Student's Admission to Boston Latin School is proper.**

**1.  Plaintiff has not been denied any rights under the Constitution.**

While Plaintiff claims that Defendants have interfered with his right to an education at BLS, no such right exists under the Federal Constitution.  Thomas v. Springfield School Comm., 59 F. Supp. 3d 294, 309-10 (D. Mass. 2014) (citing Toledo v. Sanchez, 454 F.3d 24, 33 (1st Cir. 2006)) (stating that the "Constitution does not guarantee a right to a public education" in response to plaintiff's assertion that school denied student public education by failing to keep child safe from other student); Hankey v. Town of Concord-Carlisle, 136 F. Supp. 3d 52, 68-69

n. 6 (D. Mass. 2015) (noting that neither an express nor implied right to public education can be found in the Constitution).

### 2. <u>McKinney Vento Act does not apply to the Plaintiff</u>

Plaintiff erroneously claims that he was denied admission to BLS because "he did not have a fixed, regular, and adequate nighttime residence' from October 11, 2017 to November 18, 2017 in violation of the McKinney Vento Act. *Plaintiff's Motion for TRO ¶9.* The McKinney-Vento Act defines homelessness children to include, children who are sharing the housing of other persons due to **loss of housing, economic hardship**, **or a similar reason**; are living in motels, hotels, trailer parks, or camping grounds **due to the lack of alternative adequate accommodations**. 24 C.F.R. § 578.3. It is clear that the Plaintiff is not suffering an "economic" hardship given parents' admitted ability to purchase a home for $1,000,000.00 in West Roxbury and enter into a lease for an apartment costing $2,360.00 per month. *See Defendant's Exhibit 9 and Plaintiff's Exhibit 32.*

### 3. <u>Plaintiff has not been denied a Right to Equal Protection under the State or Federal Constitution</u>

Plaintiff erroneously pursues protection under the Equal Protection clause for his argument for denial of admission at BLS. "The Equal Protection Clause of the Fourteenth Amendment commands that   no State shall "deny to any person within     its     jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. <u>City of Cleburne, Tex. v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985). The courts have had to determine the "validity of state legislation or other official action that is challenged as denying equal protection" specifically when a classification is based on race, alienage, or national origin. *Id.*

BPS' Residency Policy cannot be viewed as violative of the Equal Protection Clause since it is applicable to all candidates seeking admission to a BPS School. As stated above, Plaintiff does not have a Constitutional Right to a public education.  Defendant BPS' residency policy is a lawful exercise of Boston School Committee's discretion under M.G.L. c. 71 § 37. Where a governmental party has broad discretion, the court will regard any decision by that body with deference.  Sierra Club v. Comm'r of Dept. of Environmental Mgmt., 439 Mass. 738, 747-48 (2003).  Provisions of Massachusetts law, concerning the school committee's power to make reasonable regulations are broadly construed in favor of the school committee.  Leonard v. School Committee of Attleboro, 349 Mass. 704, 708 (1965); see also Dowd v. Town of Dover, 334 Mass. 23, 26 ("Statute providing that a school committee has general charge of all public schools when not otherwise provided for, is to be broadly construed).  Rules adopted by the school committee for governance of public schools must be presumed to be based upon mature deliberation and welfare of community. See Leonard, 349 Mass. at 709.

In establishing its Residency Policy, the Boston School Committee properly exercised the broad, general charge granted under M.G.L. c. 71 § 37 and further confirmed by the Leonard court. 349 Mass. at 708.  In Ding, the Court held that Boston has strong interests in avoiding the burden of educating students not actually residing in Boston, preserving limited places at Boston Latin School for Boston residents, and preserving the credibility of the residency requirement. Ding ex rel. Ding v. Payzant, No. CIV A. 03-5847, 2004 WL 1147450, at *12 (Mass. Super. May 20, 2004).  In enacting a residency policy that requires exam school students to establish residency by the first Friday in November of the year before entrance, the Boston School Committee based this rule upon mature deliberation and welfare of community.  The court must accept inferences drawn by the government party, as long as those inferences are reasonable.  *Id*;

*See also* <u>Wood v. Strickland</u>, 420 U.S. 308, 326 (1975) ("It is not the role of the . . . courts to set aside decisions of school administrators which the court may view as lacking basis in wisdom or compassion.").  Where the residency statute is silent under M.G. L. c. 76 § 5, the Boston School Committee exercised their discretion in creating a stricter policy for exam schools to eliminate residency fraud.

BPS residency policy was put into place to ensure fairness in residents' access to public school placement (such as the limited spots available at exam schools) and to protect taxpaying families from paying for nonresidents' education, free-of-charge.  Particularly, the exam schools in Boston are highly sought after—having the opportunity to attend exam schools provides Boston's diverse student population with the opportunity to access a rigorous learning environment.  Unfortunately, due to the desirability of the exam schools, BPS has faced a long-standing issue of residency fraud, such as parents renting property in Boston or using other addresses of friends and family solely for their non-resident child to have the opportunity to take advantage of the opportunities available at BPS exam schools. To protect the interest of Boston's taxpaying residents and to reduce residency fraud, the Boston School Committee exercised their discretion, available to them by statute and given deference in this court, to fill a gap where the residency statute is silent—by creating stricter a residency policy for exam schools. The stricter residency policy for exam school's purpose is to prevent the continuous issue of residency fraud by allowing more time for BPS to investigate residency before the start of the school year.

### C.  <u>Preliminary Injunction</u>

The courts award injunctive relief as an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief".  <u>Winter v. Natural Resources Defense Council, Inc</u>*.,* 555 U.S. 7, 24 (2008); *see also* <u>Henke v. Dep't of the Interior</u>*,* 842 F.

Supp. 2d 54, 58 (D.D.C. 2012); Occupy Boston v. City of Boston, 2011 WL 7460294, 29

Mass.L.Rptr. 337.   As such, plaintiffs carry the burden of demonstrating that circumstances

require intervention by the Court "without the usual careful procedures and litigation methods".

*See* Comfort ex rel. Neumyer v. Lynn Sch. Comm., 100 F. Supp. 2d 57, 60 (D. Mass. 2000),

citing Boston's Children First v. City of Boston, 62 F.Supp.2d 247, 253 (D.Mass.1999).

In deciding whether the plaintiff meets its burden to obtain a preliminary injunction, the

court considers the familiar standards set forth in Packaging Indus. Group, Inc. v. Cheney, 380

Mass. 609, 405 N.E.2d 106 (1980), and Commonwealth v. Mass. CRINC, 392 Mass. 79, 466

N.E.2d 792 (1984). In order for a preliminary injunction to issue, the moving party must

show:(1) a likelihood of success on the merits; (2) that irreparable harm will result from denial of

the injunction; and (3) that, in light of the [moving party's] likelihood of success on the merits,

the risk of irreparable harm to the [moving party] outweighs the potential harm to the

[nonmoving party] in granting the injunction.' Tri–Nell Mgt., Inc. v. Board of Health of

Barnstable, 433 Mass. 217, 219 (2001). When a party seeks to enjoin governmental action, a

judge is also 'required to determine that the requested order promotes the public interest, or,

alternatively, that the equitable relief will not adversely affect the public.' Commonwealth v.

Mass. CRINC, 392 Mass. 79, 89 (1984); Loyal Order of Moose, Inc., Yarmouth Lodge # 2270 v.

Board of Health of Yarmouth, 439 Mass. 597, 601, 790 N.E.2d 203 (2003), *quoting* Tri–Nel

Mgt., Inc. v. Board of Health of Barnstable, 219, 741 N.E.2d 37. The moving party bears the

burden of establishing that these four factors weigh in its favor.  Esso Standard Oil Co. (P.R.) v.

Monroig–Zayas, 445 F.3d 13, 18 (1st Cir.2006). However, particular consideration is given to

the first prong of the preliminary injunction analysis and if the plaintiff cannot establish

likelihood of success on the merits, "the remaining factors become matters of idle curiosity".

New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir.2002); Voice of The Arab World v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir.2011); Cohen v. Brown University, 991 F.2d 888, 903 (1st Cir.1993); Comfort ex rel. Neumyer v. Lynn Sch. Comm., 100 F. Supp. 2d 57, 61 (D. Mass. 2000).

Where a governmental party has broad discretion, the court will regard any decision by that body with deference. Sierra Club v. Comm'r of Dept. of Environmental Mgmt., 439 Mass. 738, 747-48 (2003). When the government party does not have broad discretion, the court may be less deferential and consider whether the party had substantial evidence to make the determination that it did; meaning, "such evidence as a reasonable mind might accept as adequate to support a conclusion." Doherty v. Retirement Bd. of Medford, 425 Mass. 130, 134 (1997). The court must accept inferences drawn by the government party, as long as those inferences are reasonable. Ding v. Payzant, 17 Mass.L.Rptr. 656, 665 (2004).

1)  Plaintiff Is Not Substantially Likely To Succeed on the Merits

Plaintiff has made the requested a temporary restraining order/preliminary injunction twice to the Suffolk Superior Court and has been denied.  *See Defendant's Exhibit 13, and Defendant's Exhibit 16,* Transcript of September 4, 2018 Hearing on Motion for Preliminary Injunction Before the Honorable Joseph F. Leighton, Jr.  In fact during both hearings, Judge Joseph F. Leighton stated that he did not see the likelihood of success on the merits and his opinion remained unchanged even during the second hearing.  *Exhibit 13, P.18:18-23 and Exhibit 16: P. 35: 24-P.36:1-3.*  Furthermore, after being denied, Plaintiff appealed this decision with the Massachusetts Appeals Court, but was again denied. *See Exhibit 17,* Massachusetts Appeals Court Order dated September 7, 2018.

To establish a likelihood of success on the merits, Plaintiff must establish the claim by setting forth evidence that "enables the court to comfortably predict" that they are likely to prevail.  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008); O'Shea v. Littleton, 414 U.S. 488, 502 (1974); Los Angeles v. Lyons, 461 U.S. 95, 103 (1983); *see also* Comfort ex rel. Neumyer v. Lynn Sch. Comm., 100 F. Supp. 2d 57 at 63.

Plaintiff merely asserts that his claim will succeed on the merits based on Mother's purported attempts at establishing a residence in Boston: attempting to buy a home, physically coming to Boston, staying one night in a hotel, obtaining a Massachusetts driver's license and a social security card addressed to a commercial property, and purportedly joining a church. *Affidavit of Mother Doe.*  Mother failed to provide any reasonable evidence to illustrate that she was domiciled in Boston and as such Plaintiff's argument that he was domiciled in Boston during October 2017 until July 2018 fails because as previously noted, a child's domicile is with the parents or those who have physical custody of the child. Ding v. Payzant 17 Mass.L.Rptr. at 664 *citing* George H. and Irene L. Walker Home for Children, Inc. v. Town of Franklin, 416 Mass. 291, 295 (1993).  Plaintiff cannot establish that he has a statutory right to attend a Boston Public School since he nor his parents were Boston residents.

As such, where Plaintiff is attempting to assert a right he does not have, his claim should fail.

### 2) Plaintiff has not shown he will be irreparably harmed without the requested injunctive relief.

Plaintiff cannot prove that he will be irreparably harmed in the absence of injunctive relief.  Plaintiff asserts that "not allowing him to begin school with his classmates has a lasting effect on the bonds he develops and how he adopts to the school".  Plaintiff's allegation lacks substance or foundation and is merely an opinion.  To prevail, Plaintiff must establish that there

is "an actual, viable, presently existing threat of serious harm."  *See, e.g.,* Winter v. Natural Res. Def. Council, Inc*.,* 555 U.S. at 22 (2008); Boston's Children First, 62 F. Supp. 2d at 250; Faust v. Cabral, 2013 WL 3933021; Gay & Lesbian Advocates & Defenders v. Attorney Gen., 436 Mass. 132, 134-35(2002) (noting that the "conjectural or mere possibility" of "some remote future" injury is not enough to warrant injunctive relief); Ross–Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 19 (1st Cir.1996) (noting that "a preliminary injunction is not warranted by a tenuous or overly speculative forecast of anticipated harm").

Plaintiff has not argued that homeschooling is no longer available to him nor has he argued that he is unable to attend an alternate school. First, Plaintiff has been homeschooled by Mother for an undisclosed period of time, and there has been no evidence provided or argument presented to negate this option.  Second, Plaintiff merely asserts arguments about *potential* social, academic, and emotional detriments to Plaintiff who may have to attend another school without any empirical proof of same.

Where for the reasons outlined above, Plaintiff cannot prove actual, presently existing harm, his argument and request for relief must fail.

3)  The harm to BPS outweighs the inconvenience or harm to Plaintiff.

The courts have long established that "a preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Natural Res. Def. Council, Inc., 555 U.S. at 24, *citing* Munaf v. Geren, 553 U.S. 674, 676 (2008).  The balance of the effect on each party of the granting or withholding of the injunction is irrefutably greater to the Defendants. The harm caused to the City of Boston and its residents, taxpayers, and public schools students substantially outweighs the alleged harm that Plaintiff asserts would befall if such relief is denied.

The <u>Ding</u> case specifically recognized the strong interest of the school district in avoiding the burden of educating non-resident students at the taxpayer's expense, enforcing a credible residency policy, and preserving limited educational seats for actual residents, and the need for expedient action to protect these interests. <u>Ding</u>, 17 Mass.L.Rptr. at 668. As previously stated, placement in the exam schools are highly sought after therefore this position could potentially be re-allocated to another student whose residency is not in question.  It is therefore very much within the public interest to support students who actually reside in the City of Boston.

4)   <u>The public's interest would not be served by granting the injunctive relief.</u>

In an appropriate case, the risk of harm to the public interest may also be considered" in determining a grant or denial of a preliminary injunction. <u>See</u> *GTE Products Corp. v. Stewart*, 414 Mass. 721 (1993) <u>citing</u> *Brookline v. Goldstein*, 388 Mass. 443, 447 (1983). The public interest would not be served by granting Plaintiff's request for a preliminary injunction.  To the contrary, enjoining BPS from removing Plaintiff from its school system would interfere with the measures of predictability, transparency, equitable fairness, and financial efficiency that BPS and the City of Boston seek for its residents.

It is axiomatic that the center of a minor student's life will be where the minor student's parents establish it to be. As a matter of public policy, the court should consider where the line needs to be drawn to prevent residency fraud, misuse of taxpayer dollars, and usurpation of the limited available school seating for actual Boston residents. In that vein, the Defendant respectfully ask the court to consider the mass effect of allowing any family to claim their child's residence based on the "intent" of a parent to establish residency then their actual residence to the detriment of everyone else.

In light of the foregoing, and Plaintiffs inability to establish a likelihood of success on the merits of their claim or show viable, presently existing irreparable harm, especially when compared to the harm to the City of Boston, its schools, students, and taxpayers, it would be in the interest of the public to DENY Plaintiff's requested relief.

### D.  **Plaintiff was not denied his Constitutional Right to Due Process**

Plaintiff was given due process and failed meet his burden in proving both residency and the need for injunctive relief. A person subject to a constitutionally protected right is entitled to a minimum process of "notice and opportunity for hearing appropriate to the nature of the case" before being deprived of same. Goss v. Lopez, 419 U.S. 565, 572-573, 579 (1977). Due process must be comprised of fundamentally fair procedures, but need not involve counsel, confrontation, or cross-examination of witnesses or other trial-type procedures. Id. at 583.

In this case, Defendants were provided an opportunity to appeal BPS's decision and was asked to submit additional information for consideration but failed to do so.  Notwithstanding this position, Defendants note that in Ding, the court held that while a student's interest in avoiding an erroneous determination of non-residency and consequent exclusion from school is strong, the deprivation of interest does not deprive the student of all public schooling, even temporarily; rather, based on residency, they may enroll in the district where he or she truly does reside. Ding, 17 Mass.L.Rptr. at 668. Additionally, Ding specifically recognized the strong interest of the school district in avoiding the burden of educating non-resident students at the taxpayer's expense, enforcing a credible residency policy, and preserving limited educational seats for actual residents, and the need for expedient action to protect these interests. Id. Like the current case, the Plaintiff in Ding was notified of the district's decision, and given an opportunity to be heard and present evidence in their favor. Id. at 668.

In the present case, unlike in *Ding*, Plaintiff had more than the requisite amount of due process, and failed to show that his burden outweighs the Defendant's burden. Here, Plaintiff's parents were given notice of the finding and the opportunity to dispute the initial residency fraud finding by the district by presenting evidence on his behalf. Plaintiff's parents refusal to provide an accurate residential address resulted in unnecessary delay in receiving their notices. Service by email is not a recognized practiced and merely done as a courtesy, if at all. Plaintiff, through his parents, took advantage of this opportunity and waived the timelines by their choice of providing an inaccurate residential address. After the district's personnel analyzed this evidence against the information presented against the Plaintiff and found in favor of the school district's original determination, Plaintiff had yet another right of appeal to the district's Chief of Staff. Plaintiff chose not to do so. As such, Plaintiff has failed to meet his burden of proving residency or obtaining injunctive relief under state law, case law, and City and school policies.

## III.    <u>CONCLUSION</u>

In light of the foregoing, based on all the factual evidence, law, and analysis, the Defendant respectfully ask the Court to find that the Plaintiff has not met his burden for injunctive relief; Defendants' decision regarding Plaintiff's residency was not arbitrary and capricious or unsupported by substantial evidence; and that the court DENY Plaintiff's request for a preliminary injunction.

September 17, 2018                    Respectfully submitted,
                                     Defendants, by their attorney,
                                     Eugene O'Flaherty, Corporation Counsel,

                                     */s/ Karen G. Castaneda*
                                     Karen G. Castaneda (BBO #662080)
                                     Assistant Corporation Counsel
                                     Office of Legal Advisor, BPS
                                     2300 Washington Street
                                     Roxbury, MA 02119
                                     617-635-9320
                                     kcastaneda2@bostonpublicschools.org

## CERTIFICATE OF SERVICE

I, Karen G. Castaneda, hereby certify that this Opposition, filed and served on September 17, 2018, was served upon Plaintiff via first class mail

                    Pankaj Merchia
                    PO Box #320077
                    West Roxbury, MA 02132

and electronically via ECF/CM.

                                     */s/ Karen G. Castaneda*